## EDWIN C. BEULKE v. BROADWAY STATE BANK AND OTHERS.[1]

July 13, 1928.

No. 26,683.

**Question of fact for jury whether exchange of property was induced by fraud.**

1. The evidence was not such as to require a finding that the defendants made fraudulent representations to the plaintiff which induced him to exchange property which he owned for property owned by the defendants. The evidence made a fact case, the merits of which were concluded by the verdict of the jury.

**New trial not required because of any error of court.**

2. There were no errors in rulings on evidence, nor in respect of the general charge or requests for instructions, requiring a new trial.

Appeal and Error, 4 C. J. p. 963 n. 68; p. 1048 n. 76.
Fraud, 27 C. J. p. 72 n. 54.

Plaintiff appealed from an order of the district court for Ramsey county, Boerner, J. denying his motion for a new trial. Affirmed.

*Hubert M. Harvey,* for appellant.

*E. O. Wergedahl* and *D. F. Nordstrom,* for respondents Broadway State Bank and A. J. Veigel.

*Weikert, Lohmann & Wilford,* for respondent Fred C. Holman.

DIBELL, J.

Action to recover damages for fraud in the exchange of property. There was a verdict for the defendants, and the plaintiff appeals from an order denying his motion for a new trial.

1. The defendant C. E. Mills was president of the defendant Broadway State Bank; the defendant Fred C. Holman was the vice-president; and the defendant F. W. Blacker was something of a curbstone broker spending much of his time about the bank but

[1]Reported in 220 N. W. 550.

having no official connection with it. The defendant A. J. Veigel is the commissioner of banks. The bank went into liquidation, and as official liquidator he is made a party, the plaintiff asking a judgment which will bind the bank and give him a preference in the distribution of the bank's assets.

The defendant Blacker exchanged with the plaintiff the Umatilla Apartments in St. Paul on the basis of a valuation of $100,000 for securities of the plaintiff valued at $42,500, the plaintiff assuming a first mortgage of $40,250 on the apartments and a second of $17,250, making a total of $57,500.

The claim of the plaintiff is that in February, 1925, the bank and the three individual defendants combined to conspire and defraud him by exchanging the apartments for his securities; that they represented that they had purchased the apartments from an eastern estate; that they were worth $110,000; that the bank would repurchase at any time; that within a reasonable time he could resell at a profit; that the defendant Blacker would care for the property; that he would give the plaintiff $150 a month as income from it, taking the rest for himself; that the property was well rented and in first-class condition; and that all these representations were untrue and made with intent to defraud, and by them he was induced to make the change.

It seems quite certain that, as is usual in trades, each party exaggerated the value of his property. There is evidence that the apartments were not worth in excess of $72,500, and there is evidence that they were worth as much as $93,000. There is evidence that the securities of the plaintiff exchanged for the apartments were not worth in excess of $22,000 or $23,000. They consisted of a mortgage on property in Iowa, farm mortgage in Montana, mortgage bonds of a cattle company, a Florida mortgage bond, a farm mortgage in North Dakota, a contract for a deed of St. Paul property, some corporate stock, and a butcher shop in St. Paul, with its equipment. The face value of these securities was $42,500, at which sum they were put into the trade. The plaintiff claims that their face value was their real value.

The jury found that there was no fraud. The charges of fraud made by the plaintiff were denied by the defendants. The issue is one of fact. The plaintiff made a bad bargain. He had sufficient opportunity to make an inspection and exercise his judgment. This he did not do effectively. Before the trade he had substantial value in his securities. The apartments seem to have been lost on the foreclosure of the second mortgage. As it has turned out the plaintiff has lost what he invested. What the result would have been if he had protected the property from foreclosure we do not know. It would seem that it was almost impossible that the plaintiff could carry out the contract successfully. The provision in the contract giving him an income of $150 a month, Blacker promising him that he should have it, and it being agreed that he, Blacker, should have everything over for taking care of the property, indicates that the venture was practically impossible. It is easy to believe that Blacker had the confidence of Beulke and imposed upon him, and was perhaps aided by appealing to Beulke's desire to make quick money. The provision for Blacker's taking care of the property was unconscionable. We are unable to say that the jury must have found fraud on the part of Blacker. Whether there was fraud, or whether the other defendants were guilty of fraud in participating in whatever Blacker did, was, putting it favorably to the plaintiff, for the jury; and no complaint can be made of their finding. Mills might have been equally in the wrong with Blacker. There was not much to connect Holman, and probably the bank could not have been found liable. The record presents merely a fact case which ends with the verdict unless there are errors affecting the result.

2. The plaintiff proposed many instructions and assigns error on a refusal to give them. He makes complaint of many rulings on evidence. There are 38 assignments of error. We have examined them and the rulings on instructions and evidence upon which error is predicated. Some of the instructions asked might have been given, but the charge on the whole presented the case fairly to the jury and in many respects quite as favorably to the plaintiff as he

could ask. There is nothing in the errors claimed which requires a new trial, nor are they of such a character that we are justified in discussing them in detail.

Order affirmed.